UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANCES HOM, Personal Representative of Raymond Holton, <br><br> Plaintiff, <br><br> v. <br><br> EDGEWOOD MANAGEMENT CORPORATION, *et al.*, <br><br> Defendants. | Civil Action No. 19-2508 (JEB) |

**MEMORANDUM OPINION**

Should knowledge of a malfunctioning fire alarm yield punitive damages against a building's management company? Plaintiff Raymond Holton, who was trapped in his apartment for five days after a fire, answers in the affirmative. Defendant Edgewood Management Corporation's pending Motion for Summary Judgment contends otherwise. Edgewood maintains that any issue with the alarm is not causally linked to Holton's injuries and that it did not possess the requisite state of mind for punitives to be awarded. While the question is reasonably close, the Court cannot at this point foreclose such a verdict and thus denies the Motion.

**I.     Background**

As it must at the summary-judgment stage, the Court considers the evidence in the light most favorable to Plaintiff. See Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011). As the relevant discussion of the state of the alarm system occurs in the Analysis section below, the Court here can be brief. Holton was rescued from his apartment after being stuck there for five days with minimal food. His Amended Complaint asserts four counts against Edgewood. See ECF No. 16 (Am. Compl.), ¶¶ 99–141. (The other Defendant, the building's owner, is no longer

1

in the case.)  Count I is titled "Ordinary and Gross Negligence" and alleges three types of negligent acts: failing to maintain the fire alarms and smoke detectors, failing to secure the building from trespassers who could cause a fire, and inaccurately informing government officials that all residents had been evacuated.  Id., ¶ 108.  Count II alleges Negligence *Per Se* and relates to fire alarms only.  Count III is for Negligent Infliction of Emotional Distress and essentially reiterates the claims in Count I.  Id., ¶¶ 128–36.  Finally, Count IV is titled "Punitive Damages," even though this should be a remedy, not a stand-alone count.

Edgewood now moves for summary judgment on punitive damages only.

## II.     Legal Standard

Under Rule 56(a), summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Liberty Lobby, 477 U.S.

at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998). The Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant, in other words, is required to provide evidence that would permit a reasonable jury to find in his favor. See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

**III.   Analysis**

In its Motion, Defendant sets forth two positions: "[T]here is no evidence 1) that any alleged act or omission by Edgewood for which punitive damages are asserted caused harm to Plaintiff or 2) that Edgewood acted maliciously." ECF No. 43-10 (Def. MSJ) at 1. Narrowing the dispute significantly, Plaintiff acknowledges that the only basis for punitives here relates to Edgewood's handling of the alarm system: "Plaintiff does not intend to seek punitive damages at trial on [the] basis that there was inadequate security to secure the building from vagrants or on the basis that Edgewood deliberately, and inaccurately, reported that Mr. Holton had been rescued. However, Plaintiff does seek punitive damages against Edgewood for its failure to maintain an operable fire alarm system, which is required by DC Code." ECF No. 44 (Pl. Opp.) at 1.

In Snow v. Capitol Terrace, Inc., 602 A.2d 121 (D.C. 1992), the D.C. Court of Appeals set forth the law of the District of Columbia: "Punitive damages may be assessed against a corporation if (1) the act of the corporate employee was intentional, malicious or willful, and (2)

3

the corporation through its officers or directors participated in the doing of the wrongful act or authorized or subsequently ratified the offending conduct with full knowledge of the facts." Id. at 127.

Edgewood believes that punitives are not warranted even on the fire-alarm system. To begin, it assails Plaintiff's reliance on a Bureau of Alcohol, Tobacco, and Firearms report that indicated that Edgewood maintenance workers "would push a 'silence' button on the fire alarm panel when an audible alarm from the panel would sound, including the day before the fire." Def. MSJ at 4 (citation omitted).  This proves little, Defendant asserts, because Plaintiff's own expert, Neil Wu, testified that depressing the silence button "does not silence or disable the building-wide fire alarm in the event of a new triggering emergency or alarm condition." Id. at 5 (citing ECF No. 43-3 (Def. Statement of Undisputed Facts, ¶ 18)).  As a result, Wu had no explanation for why the alarm did not go off on the day of the fire. Id. (citing DSMF, ¶ 20).  He could testify only that it did not operate as it should have. Id. (citing DSMF, ¶ 23).  As a result, Defendant maintains that no punitives may be awarded where Plaintiff cannot tie specific Edgewood conduct to the alarm's performance during the fire, let alone show a malicious state of mind.

Plaintiff rejoins that Defendant's position is far too cabined; instead, he cites the following acts and omissions: "1) Edgewood's failure to maintain an operable, code-complaint [sic] fire alarm system to protect the elderly residents of the Arthur Capper building; 2) Edgewood management's actual knowledge that the system was inoperable; and 3) Edgewood's failure to repair the system for 9 months after being aware that it was defective because it was trying to save money." Pl. Opp. at 2.

More specifically, Plaintiff points to a June 2017 inspection by ARK Systems, which found deficiencies in the alarm and life-safety systems and "recommended a fire watch to enhance fire protection protocols until the system was repaired." ECF No. 44-1 (Pl. Counter Designation of Facts), ¶ 2. No such fire watch was implemented. Id., ¶ 5. In addition, Castle Sprinkler and Alarm was engaged in December 2017 to perform a further inspection. Id., ¶ 6. It "identified 6 different deficiencies, including inoperable horns, an inoperable display screen on the panel, and that the system was not being monitored off-site." Id., ¶ 8. These, too, were not corrected. Id., ¶ 9. Finally, Edgewood "was aware that the system was out of compliance with [the D.C.] Code." Id., ¶ 10. In part, this was because the Code requires off-site monitoring, which had ceased given Edgewood's failure to pay. Id., ¶¶ 11–12. This conduct, at least in concert, could be sufficient to enable the Court to award punitive damages.

In its Reply, Edgewood takes aim at the Castle Report, pointing out that the deficiencies did not render the system as a whole inoperable. See ECF No. 49 (Def. Reply) at 3. It contends, moreover, "[T]here is no evidence whatsoever that the failure of the building fire alarm system to sound on the day of the fire was in any way related to the deficiencies noted in the Castle Report." Id. In other words, the specific deficiencies in the Report did not relate to the second floor where Holton lived or to the operability of the system overall. Id. at 3–4. Again, Edgewood emphasizes that Plaintiff's expert could not pinpoint the reason why the alarm did not sound that day. Id. at 4.

Yet even if the Court were to discount the Castle Report, Defendant has not rebutted Plaintiff's other bases for punitive damages — namely, the failure to implement the ARK recommendations and the lapse in off-site monitoring. The Court is not finding that these two issues would likely merit a punitives award; indeed, there may have been no causal connection

5

between them and the injuries that Holton suffered.  As Edgewood has not sufficiently established that to be the case at this point, however, the Court is not prepared to strike the prayer for punitives.  At the conclusion of Plaintiff's case — and also after the close of the evidence — Defendant is certainly free to renew this Motion.

## IV.     Conclusion

The Court, accordingly, will deny Defendant's Motion for Summary Judgment.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  May 19, 2022